**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVI P. RAWAT, on behalf of himself and others similarly situated,** | ) ) ) | |
| | ) | **Case No. 08-cv-4305** |
| Plaintiff, | ) | |
| **v.** | ) | **Judge James B. Moran** |
| | ) | |
| **NAVISTAR INTERNATIONAL CORPORATION,** | ) ) | **Magistrate Judge Martin C. Ashman** |
| | ) | |
| Defendant. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES
OF NAVISTAR INTERNATIONAL CORPORATION**

Defendant Navistar International Corporation ("Navistar" or the "Company"), by its

counsel, as its Answer and Affirmative Defenses to the Class Action Complaint of Plaintiff Ravi

P. Rawat ("Plaintiff") states as follows:

**NATURE OF THE ACTION**

1.      This action is a refiling of a case filed on May 23, 2008 in the Northern District of
Illinois, captioned *Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.) for which Defendant has
moved to dismiss for lack of subject matter jurisdiction on the sole grounds that there are fewer
than 100 class members.  Plaintiff does not concede that federal subject matter jurisdiction does
not exist, but for efficiency purposes brings the action in this Court.

**ANSWER:**

Navistar admits that a case captioned *Rawat v. Navistar Int'l Corp.*, 08-3038, is pending

in the Northern District of Illinois and that Navistar has moved to dismiss that case for lack of

subject matter jurisdiction because the putative class in that action contains less than 100

persons.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph

1.  Navistar affirmatively states that the filing of this duplicative case by Plaintiff and his counsel

is an abuse of the class device.

2.      Specifically, this action is brought on behalf of employees and former employees of Navistar International Corporation who owned contractually vested stock options but were prevented from exercising their options with respect to which the Company refused to permit exercise prior to expiration, ascribed to a "blackout" period caused by Navistar's failure to have current financial reporting as required by federal law.  Navistar's "blackout" period, as the result of management malfeasance, led to Navistar having to restate its financials.  By allowing options to expire and prohibiting employees and former employees from exercising their vested options pursuant to the option contract, Navistar breached the option contract and its implied covenant of good faith and fair dealing.  Failing to compensate individuals for their contractually vested rights also violated the Illinois Wage Payment and Collection Act.  Further, Plaintiff asks this Court to nullify any releases received by Defendant in connection with an inadequate and coercive settlement offer sent to putative class members after, and as a deceitful response to, the original filing of this lawsuit.

**ANSWER:**

Navistar admits that this action purports to be brought on behalf of certain persons who

allegedly were prevented from exercising vested stock options.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 2.

**JURISDICTION AND VENUE**

3.      Jurisdiction:  This Court has general jurisdiction over Defendant.  This Court has jurisdiction over the subject matter of this controversy and the parties pursuant to 735 ILCS 5/2-209(a)(1)(transacting business in this state), (a)(3)(ownership, use and possession of real estate situated in this state), (a)(7)(the making and performance of a contract or promise substantially connected with this state), and (b)(4) (corporation doing business in Cook County, Illinois).

**ANSWER:**

Paragraph 3 includes only conclusions of law to which no answer is required.  To the

extent Paragraph 3 is deemed to include allegations of fact, Navistar further states that subject

matter jurisdiction is proper as set forth in Navistar's Notice of Removal, filed on July 29, 2008.

Navistar denies any remaining allegations in Paragraph 3.

4.      Venue:  is therefore also proper in this county under 735 ILCS 5/2-101 because Navistar is a foreign corporation authorized to transact business in this state, and under 73 ILCS 5/2-101 any foreign corporation authorized to transact business in this state is a resident of any county in which it has its registered office or other office or is doing business.  Navistar's Illinois registered agent, CT Corporation System, is located at 208 South LaSalle Street, Chicago, IL

60604.  Navistar also does business in Cook County.  Specifically, Navistar has an engine plant located at 10400 W North Ave Melrose Park, IL 60160, which is in Cook County.

**ANSWER:**

Navistar admits that it is authorized to transact business in Illinois and does business in Cook County.  Navistar further admits that its registered agent, CT Corporation System, has an office in Chicago, Illinois.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 4.

## PARTIES

5.    Plaintiff Ravi P. Rawat is a citizen of Illinois and is a former Assistant General Manager of the heavy truck group of Navistar International Corporation.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation of Plaintiff's citizenship, and on that basis, denies that allegation.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 5.

6.    Defendant Navistar International Corporation is a Delaware Corporation with its principal place of business located at 4201 Winfield Road, Warrenville, Illinois 60555, and has its registered Illinois office in Cook County as well as an office doing business in Cook County.

**ANSWER:**

Navistar admits that it is a Delaware corporation with its principal place of business located at 4201 Winfield Road, Warrenville, Illinois 60555.  Navistar further admits that it does business in Cook County.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 6.

## BACKGROUND OF THE WRONGDOING

7.    Plaintiff began working for Defendant Navistar in January 1989.  Throughout his tenure at Navistar, Plaintiff was granted stock options on seven occasions.

**ANSWER:**

Navistar admits that Plaintiff was granted stock options on seven occasions.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 7.

8.     On April 6, 2006, Navistar announced that as a result of its failure to file its Annual Report with the Securities and Exchange Commission (the "SEC") for the fiscal year ended October 31, 2005, the shares of the Company's common stock that were acquired pursuant to the employee benefit plans set forth below would not be available for use until the Annual Report is filed with the SEC.

**ANSWER:**

Paragraph 8 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the Securities and Exchange Commission ("SEC").  That document, in its entirety, speaks for itself, and to the extent the allegations in Paragraph 8 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 8.

9.     The Company also announced that it intended to file its Annual Report with the SEC as soon as possible, but could not estimate the date such report would be filed.

**ANSWER:**

Paragraph 9 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the SEC.  That document, in its entirety, speaks for itself, and to the extent the allegations in Paragraph 9 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 9.

10.    Because of the Company's prior conduct and the fact that the Company had to restate its financials, it suspended purchases of its shares by participants and beneficiaries in the United States in the following plans:  (1) International Truck and Engine Corporation 401(k) Retirement Savings Plan; (2) International Truck and Engine Corporation Retirement Accumulation Plan; (3) International Truck and Engine Corporation 401(k) Plan for Represented Employees; and (4) the IC Corporation 401(k) Plan (collectively, the 401(k) Plans).

**ANSWER:**

Paragraph 10 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the SEC.  That document, in its entirety, speaks for itself, and to the extent the

allegations in Paragraph 10 vary therewith, Navistar denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 10.

11.    According to the Company, the blackout period prevented participants and beneficiaries from making additional investments in the company's common stock through the 401(k) Plans.

**ANSWER:**

Paragraph 11 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the SEC. That document, in its entirety, speaks for itself, and to the extent the allegations in Paragraph 11 vary therewith, Navistar denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 11.

12.    Further, the Company sent a notice to its directors and executive officers informing them that a blackout period would begin on April 6, 2006 and would end at 4:00 pm Central Time on the day on which the Annual Report was filed with the SEC.

**ANSWER:**

Paragraph 12 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the SEC. That document, in its entirety, speaks for itself, and to the extent the allegations in Paragraph 12 vary therewith, Navistar denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 12.

13.    As described by the Company, Navistar's directors and executive officers would generally be prohibited from directly or indirectly acquiring, disposing of, or transferring any equity securities of the company acquired by them in connection with their service and/or employment with the company in such capacities. The notice was allegedly sent to ensure compliance with Section 306(a) of the Sarbanes Oxley Act of 2002.

**ANSWER:**

Paragraph 13 appears to be derived from portions of Navistar's April 6, 2006 Form 8-K filed with the SEC. That document, in its entirety, speaks for itself, and to the extent the allegations in Paragraph 13 vary therewith, Navistar denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 13.

14.     As of the date this suit was originally filed in the Northern District of Illinois, Navistar had not filed its updated financials with the SEC.

**ANSWER:**

Navistar denies the allegations in Paragraph 14.

## NAVISTAR'S STOCK OPTION PLANS

15.     Navistar is a holding company whose wholly owned subsidiaries produce International® brand commercial trucks, MaxxForce brand diesel engines, IC brand school buses, and Workhorse brand chassis for motor homes and step vans.  It also is a private-label designer and manufacturer of diesel engines for the pickup truck, van and SUV markets.  The company also provides truck and diesel engine parts and services.

**ANSWER:**

Navistar admits the allegations in Paragraph 15.

16.     According to the 2004 Performance Incentive Plan (the "Plan" or "Stock Option Plan"):

> "The purpose of the Plan is to enable the Corporation and its subsidiaries to attract and retain highly qualified Employees, Consultants, and Non-Employee Directors, and additionally to provide key Employees who hold positions of major responsibility the opportunity to earn incentive awards commensurate with the quality of individual performance, the achievement of performance goals and ultimately the increase in shareowner value."

(Ex. A).

**ANSWER:**

The document referenced in Paragraph 16 speaks for itself, and to the extent the

allegations in Paragraph 16 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 16.

17.     An option gives the holder a contractual right to purchase one share of stock (per option) at a set price, called the "strike" or "exercise" price.  The strike price is determined on the day of the option grant.

**ANSWER:**

Navistar denies the allegations in Paragraph 17.

18.     If the stock's market price rises above the strike price, the employee can exercise the option, buying stock at the strike price. The employee can then sell the stock back at the market price and benefit from the difference.

**ANSWER:**

Navistar denies the allegations in Paragraph 18.

19.     Under the Plan, the stock options expire ten years after their grant and must be exercised within 90 day after leave Navistar's employ. Specifically, stating that either a Incentive or Nonqualified Stock Option is:

"a right, as evidence by an agreement between the Participant and the Company . . . to purchase a certain number of shares of Common Stock at Fair Market Value for a period of ten (10) years and one day form the date of grant."

Ex. A.

**ANSWER:**

The document referenced in Paragraph 19 speaks for itself, and to the extent the

allegations in Paragraph 19 vary therewith, Navistar denies them. Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 19.

20.     According to Navistar's Stock Option Plan, when employees leave Navistar, they have 90 days to exercise his or her option at the strike price.

**ANSWER:**

The document referenced in Paragraph 20 speaks for itself, and to the extent the

allegations in Paragraph 20 vary therewith, Navistar denies them. Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 20.

21.     Plaintiff and the Class received options pursuant to Navistar's Stock Option Plan.

**ANSWER:**

Navistar admits that the Plaintiff received options pursuant to one or more Navistar

performance incentive plans. Those plans speak for themselves. Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 21.

22.    Navistar's Stock Option Plan provides:

"The Committee will document the terms of the Stock Option in an Award Agreement to include the Grant Date and Exercise Price, as well as any other terms that it may desire.  The Exercise Price under a Stock Option shall not be less than one hundred percent (100%) of the Fair Market Value of a share of Common Stock on the Grant Date.  Subject to adjustment pursuant to Section XII, the Exercise Price of outstanding Options fixed by the Committee shall not be modified."

***

"Unless otherwise determined by the Committee, a Stock Option granted under the Plan *will become exercisable in whole or in part after the commencement of the second year of the term of the Stock Option* to the extent of one third of the shares, to the extent of one third of the shares after commencement of the third year, and to the extent of one third of the shares after commencement of the fourth year."

**ANSWER:**

The document referenced in Paragraph 22 speaks for itself, and to the extent the allegations in Paragraph 22 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 22.

## SUBSTANTIVE ALLEGATIONS

23.    Plaintiff Rawat was the Assistant General Manager of the heavy truck group at Navistar's Cantera facility in Naperville, Illinois.

**ANSWER:**

Navistar admits that Plaintiff was at one time employed at the Cantera facility in Warrenville, Illinois.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 23.

24.    Throughout the time he was employed by Navistar, he was granted options pursuant to the Stock Option Plan on a yearly basis, starting in 1998.

**ANSWER:**

Navistar admits that the Plaintiff received options pursuant to one or more Navistar

performance incentive plans.  Except as expressly admitted, Navistar denies the allegations in

Paragraph 24.

25.    Mr. Rawat separated from Navistar, effective January 5, 2007, while the blackout
period was in effect.

**ANSWER:**

Navistar denies the allegations in Paragraph 25.

26.    Navistar's 1994 Performance Incentive Plan (as amended December 11, 2001)
provides that the Company can grant two types of options.  Incentive Stock Options, defined as:

> "***a right, as evidenced by an agreement between the participant and the
> Company*** in a form approved by the Committee, to purchase a certain number of
> shares of Common Stock at Fair Market Value for a period of ten (10) years from
> the date of grant which options are designed to meet the requirements set out
> under Section 422 of the Internal Revenue Code."

The Plan also provides for Nonqualified Stock Options, defined as:

> "***a right, as evidenced by an agreement between the participant and the
> Company*** in a form approved by the Committee, to purchase a certain number of
> shares of Common Stock at Fair Market Value for a period of ten (10) years from
> the date of grant on which options are stated not to be qualified as incentive stock
> options under Section 422 of the Internal Revenue Code."

**ANSWER:**

The document referenced in Paragraph 26 speaks for itself, and to the extent the

allegations in Paragraph 26 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 26.

27.    The difference between these options is merely the tax treatment between the
options, and for purposes of this action, the options – as in the stock option plan[1] – should be
treated identically.

---

[1]    The 1994 Stock Option Plan also provides that the term "Stock Option" mean either an
Incentive Stock Option or a Nonqualified Stock Option.

**ANSWER:**

The documents referenced in Paragraph 27 speaks for themselves, and to the extent the

allegations in Paragraph 27 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 27.

28.     At the time of his resignation Mr. Rawat had vested options that, according to the
Stock Option Plan, were a contractual right and exercisable within 90 days from the date of his
effective resignation.

**ANSWER:**

Navistar admits that at the time of his resignation, Plaintiff possessed vested options.

Navistar further states that the document referenced in Paragraph 28 speaks for itself, and to the

extent the allegations in Paragraph 28 vary therewith, Navistar denies them.  Except as expressly

admitted, Navistar denies any remaining allegations in Paragraph 28.

29.     Mr. Rawat made several attempts to exercise within the 90 day period after his
separation.  Navistar refused to allow him to exercise his rights under the guise of the
Company's unilateral self-imposed blackout period, which continued from the time of Mr.
Rawat's resignation until the 90 day period ended on April 5, 2007.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegation regarding Plaintiff's alleged attempts to exercise, and on that basis,

denies it.  Navistar denies any remaining allegations in Paragraph 29.

30.     During the 90 days between January 5, 2007 and April 5, 2007, Mr. Rawat had
numerous discussions with Navistar and Merrill Lynch (Navistar's stock option administrator) in
an attempt for Mr. Rawat to rightfully exercise his vested options.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 30 regarding discussions with Merrill Lynch, and on that

basis, denies them.  Navistar denies any remaining allegations in Paragraph 30.

31.    Ultimately, the Company refused to allow Mr. Rawat to exercise his options and breached the option contract.

**ANSWER:**

Navistar denies the allegations in Paragraph 31.

32.    On January 15, 2008, Navistar sent a letter to "Holders of Navistar International Corporation Stock Options."  (Ex. B)

**ANSWER:**

The document referenced in Paragraph 32 speaks for itself, and to the extent the

allegations in Paragraph 32 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 32.

33.    The letter stated that "the Company is not current with its financial filing with the Securities and Exchange Commission.  As a result, there are certain limits on your ability to exercise your stock options."

**ANSWER:**

The document referenced in Paragraph 33 speaks for itself, and to the extent the

allegations in Paragraph 33 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 33.

34.    The letter further stated that "... some of your stock options may have expired or will expire in the near future.  We plan to address this issue but we are unable to do so now... [o]ur plan is to discuss this issue with our Board of Directors.  We cannot predict what, if any, action our directors will take, but we will communicate with you, no matter what the outcome..."

**ANSWER:**

The document referenced in Paragraph 34 speaks for itself, and to the extent the

allegations in Paragraph 34 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 34.

## NAVISTAR'S NOTICE TO CLASS MEMBERS THAT
## <u>THEIR STOCK OPTIONS WERE TERMINATED/EXPIRED</u>

35.    Further, in a Notice of Cancellation post dated January 29, 2008, Navistar's stock option administrator, Merrill Lynch, sent out a Notice of Cancellation and Termination of Stock Options.  Ex. C.

**<u>ANSWER</u>:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 35, and on that basis, denies them.

36.    The Notice of Cancellation advised option holders whose stock options had expired that they would receive ***nothing*** in consideration for their contractually vested rights to stock options.

**<u>ANSWER</u>:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegation in Paragraph 36 that the document referred to therein is what Plaintiff

purports it to be, and on that basis, denies it.  Navistar denies any remaining allegations in

Paragraph 36.

37.    Navistar directed Merrill Lynch to send the Notice of Cancellation and Expiration.  In light of this Notice of Cancellation, the January 29, 2008 letter shows itself as an effort to show option holders expectations downward.  In that light, Navistar's inadequate and coercive offer (as described below) is even more abhorrent because class members who were told they would receive *nothing*, now have an opportunity to receive *something*, albeit inadequate.

**<u>ANSWER</u>:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegation in Paragraph 37 that Merrill Lynch sent a Notice of Cancellation and

Expiration, and on that basis, denies it.  Navistar denies any remaining allegations in Paragraph

37.

## NAVISTAR'S DECEITFUL STRATEGY AND
## INADEQUATE, COERCIVE OFFER

38.     On May 23, 2008 Mr. Rawat filed a class action in the Northern District of Illinois, titled *Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.) and effected service on Navistar May 29,2008.  The Complaint was to be answered by June 18, 2008.  On June 11, 2008, Defendant's counsel Robin Hulshizer called to introduce her firm and requested Plaintiff counsel's agreement to extend Navistar's time to respond to Plaintiff's complaint, representing that the extension was for "convenience of counsel," ascribed to weddings and vacations. Plaintiff's counsel Krislov readily agreed to the extension.

**ANSWER**:

Navistar admits that Plaintiff filed a class action in the Northern District of Illinois, titled

*Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.) and served Navistar with that complaint on

May 29, 2008.  Navistar further admits the due date for Navistar to answer or otherwise respond

to that complaint was June 18, 2008.  Navistar further admits that Robin Hulshizer telephoned

Mr. Krislov to discuss an extension of time to answer or otherwise respond and that Mr. Krislov

agreed to the extension.  Except as expressly admitted, Navistar denies any remaining allegations

in Paragraph 38.

39.     Less than two weeks later, on June 24, 2008, the hearing date for Defendant's Motion to Extend time to respond, undersigned counsel Clinton A. Krislov received an anonymous call inquiring about the case from a person claiming to be a putative class member who had received a communication from Navistar that asked the recipients to release their claims against the Company and covenant not to sue.  The same day, at 10:14 a.m. Krislov e-mailed Hulshizer with his concerns.  An hour later, Hulshizer returned the call professing not to have seen the e-mail and confirmed that the letter was sent to all option holders not currently in litigation with the Company.

**ANSWER**:

Navistar admits that Robin Hulshizer called Mr. Krislov on June 24, 2008 and that Mr.

Krislov emailed Ms. Hulshizer on June 24, 2008.  Navistar is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 39,

and on that basis, denies them.  Except as expressly admitted, Navistar denies any remaining

allegations in Paragraph 39.

40.    The June 20, 2008 Letter[2].  Review shows that the letter is indeed misleading and coerces class members into precipitously signing releases.  Rather than encouraging class members to seek their own counsel and tax advice, they are promised that employees who send releases received before July 3 will receive a check by July 31.  All other releases received by August 1, will receive a check by August 31, explicitly precluding them from participating in this action, and directing any questions to the Company.  Indeed, the extension was not for convenience of counsel, but a subterfuge to allow the Defendant a sufficient opportunity to contact putative class members in an effort to thwart this litigation and prevent class members from timely and thoughtful evaluation of their rights and make intelligent, informed decisions involving tens if not hundreds of thousands of dollars prematurely and without reasonable time for reflection, counsel and tax advice.

**ANSWER:**

The document referenced in Paragraph 40 speaks for itself, and to the extent the

allegations in Paragraph 40 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 40.

41.    Indeed, the offer is unfairly low considering that it treats each person as having exercised and sold his or her shares immediately on the expiration date.  Pegging the consideration to the expiration date is unfair.  Because of Navistar's wrongdoing, the financials during this period were not current and the market prices were not a reliable indicia of the value of the stock.  Notably, on May 29, 2008, the end of the blackout period, the relisted Navistar shares had a market price of $75.90.

**ANSWER:**

Navistar admits that its stock closed on May 29, 2008 at $75.90.  Except as expressly

admitted, Navistar denies any remaining allegations in Paragraph 41.

42.    Moreover, other companies faced with similar blackout period expiration have afforded option holders much more generous terms, *e.g.*, either extending the exercise period for the duration of the blackout period or pricing exchange offers at the top of blackout period pricing, or the day it ended for all options holders.

---

[2]    Attached hereto as Exhibit D.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42, and on that basis, denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 42.

43.    On June 25, 2008, Plaintiff filed an emergency motion to correct the notice sent to the putative class. United States District Judge Darrah ordered that no releases be accepted until at least August 1, 2008 and further ordered Navistar to send corrective notice to putative class members in the form attached as Exhibit E.

**ANSWER:**

Navistar admits that Plaintiff filed an emergency motion on June 25, 2008. Navistar further admits that Judge Darrah entered an Order dated June 30, 2008. Navistar further states that the document referenced in Paragraph 43 speaks for itself, and to the extent the allegations in Paragraph 43 vary therewith, Navistar denies them. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 43.

44.    In the meantime, Navistar has asserted that there is no federal subject matter jurisdiction because there are fewer than 100 class members. Accordingly, Plaintiff has filed this action in Illinois State Court where jurisdiction is uncontestable.

**ANSWER:**

Navistar admits that it filed a motion to dismiss for lack of subject matter jurisdiction in the law suit pending before Judge Darrah, Case No. 08-cv-3038, on the grounds that there are fewer than 100 class members. Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 44.

45.    Even though putative class members received the "corrective notice," the disinformation conveyed to option holders that their rights are worthless coupled with the severely truncated time to respond and the neutral tone of the corrective notice has still caused many class members to be harmed by signing releases of their legal rights to this action without full information of their rights and the appropriate value, thus making their releases voidable. Invalidating the releases to class members is an appropriate remedy.

**ANSWER:**

Navistar denies the allegations in Paragraph 45.

## CLASS ALLEGATIONS

46.     **The Proposed Class.**  Plaintiff brings this case for himself and for the following class:

> all Navistar employees and former employees whose stock options either expired or who were prevented from exercising their options during the Navistar's "blackout" period.  (April 6, 2006 - May 29, 2008).

The Class satisfies all the prerequisites for certification under 735 ILCS 512-801.

**ANSWER:**

Navistar admits that Plaintiff purports to bring this action as a class action.  Navistar denies that this action is appropriate for class treatment.  Except as expressly admitted, Navistar denies any remaining allegations in Paragraph 46.

47.     **Numerosity.**  The Class consists of dozens of individuals and therefore is so numerous that joinder is impracticable.

**ANSWER:**

Navistar denies the allegations in Paragraph 47 and expressly states that this action is not appropriate for class treatment.

48.     **Typicality.**  Plaintiff's claims are typical of the claims of the Class because he and the Class sustained damages as a result of Navistar's prohibition of allowing employees and former employees to exercise their stock options during the Company's blackout period.

**ANSWER:**

Navistar denies the allegations in Paragraph 48 and expressly states that this action is not appropriate for class treatment.

49.     **Commonality and Predominance.**  There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including whether:

> (a)     Navistar was obligated to institute a blackout period;

16

(b)     the blackout period option exercise denial was appropriately imposed on all option holders;

(c)     Navistar breached its contractual obligations under the Stock Option contracts;

(d)     Navistar breached its duty of good faith and fair dealing in connection with the Stock Option contracts;

(e)     Navistar's communication to putative class members was coercive and misleading; and

(f)     Navistar is liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

**ANSWER:**

Navistar denies the allegations in Paragraph 49 and expressly states that this action is not

appropriate for class treatment.

50.     **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff has retained competent and experienced counsel in complex class actions, securities, and corporate litigation.  Counsel is committed to the vigorous prosecution of this action.

**ANSWER:**

Navistar denies the allegations in Paragraph 50 and expressly states that this action is not

appropriate for class treatment.

51.     **Appropriateness as a Class Action.**  The prosecution of separate actions by the Plaintiff and individual members of the Class against Defendant would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action. A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases in order to initiate their rights.  In the absence of a class action, Defendant will retain the benefits of their wrongdoing.

**ANSWER:**

Navistar denies the allegations in Paragraph 51 and expressly states that this action is not

appropriate for class treatment.

## JURY DEMAND

52.     Plaintiff and the Class demand a jury trial on all issues so triable.

**ANSWER:**

Navistar admits that Plaintiff purports to request a jury trial.  Except as expressly

admitted, Navistar denies any remaining allegations in Paragraph 52.

## COUNT I
### BREACH OF CONTRACT

53.     Plaintiff hereby incorporates all of the foregoing paragraphs.

**ANSWER:**

Navistar repeats and realleges the responses set forth above as if fully restated herein as

and for its answer to Paragraph 53.

54.     Plaintiff and the Class and Defendant were parties to Stock Option Agreements
pursuant to which Defendant agreed to permit Plaintiff and the Class to purchase Navistar shares
of stock before the stock options expired, including a 90 day period after termination of
employment.

**ANSWER:**

The documents referenced in Paragraph 54 speaks for themselves, and to the extent the

allegations in Paragraph 54 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 54.

55.     Plaintiff and the Class performed all conditions, covenants and promises to be
performed on their part in accordance with the contracts.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 55, and on that basis, denies them.

56.     Defendant breached the Stock Option Agreements with Plaintiff and the Class by
failing to permit them to exercise their options and purchase shares during the term of the option.

**ANSWER:**

Navistar denies the allegations in Paragraph 56.

57.　　As a result of Defendant's breach of the Stock Option Agreements, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amounts they would have received from exercising their stock options.

**ANSWER:**

Navistar denies the allegations in Paragraph 57.

**COUNT II**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

58.　　Plaintiff hereby incorporates all of the foregoing paragraphs.

**ANSWER:**

Navistar repeats and realleges the responses set forth above as if fully restated herein as

and for its answer to Paragraph 58.

59.　　The Stock Option Agreements entered into between Plaintiff and the Class and Defendant are contracts that contain an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the contracts fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff and the Class from performing any or all conditions of the contracts that they agreed to perform, or any acts that would deprive Plaintiff and the Class of their benefits.

**ANSWER:**

The documents referenced in Paragraph 59 speaks for themselves, and to the extent the

allegations in Paragraph 59 vary therewith, Navistar denies them.  Except as expressly admitted,

Navistar denies any remaining allegations in Paragraph 59.

60.　　Plaintiff and the Class performed all conditions, covenants and promises to be performed on their part in accordance with the contracts.

**ANSWER:**

Navistar is without knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 60, and on that basis, denies them.

61.    Defendant knew Plaintiff and the Class fulfilled all their duties and conditions under the contracts.

**ANSWER:**

Navistar denies the allegations in Paragraph 61.

62.    Defendant breached the implied covenant of good faith and fair dealing under the contracts by engaging in the conduct complained of herein and by engaging in the conduct that led to the Company's blackout period and thereafter.  While the blackout was no fault of the Plaintiff, the Company refused to extend the exercise period beyond the blackout so that Plaintiff could have a meaningful opportunity to exercise their contractual rights conferred upon them by option grants, thereby preventing Plaintiff from exercising their stock options.

**ANSWER:**

Navistar denies the allegations in Paragraph 62.

63.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amounts they would have received from exercising their options.

**ANSWER:**

Navistar denies the allegations in Paragraph 63.

## COUNT III
### VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

64.    Plaintiff hereby incorporates all of the foregoing paragraphs.

**ANSWER:**

Navistar repeats and realleges the responses set forth above as if fully restated herein as

and for its answer to Paragraph 64.

65.    At all relevant times, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, is and was in full force and effect.[3]

---

[3]    Also, on July 9, 2008, more than three days before this action was filed, Plaintiff made a demand pursuant to the Illinois Attorneys Fees and Wage Actions Act, 705 ILCS 225/1.  Ex. F.

**ANSWER:**

Paragraph 65 includes conclusions of law to which no answer is required.  Navistar

admits that Plaintiff sent a letter dated July 9, 2008 to counsel for Navistar that speaks for itself,

and to the extent the allegations in Paragraph 65 vary therewith, Navistar denies them.  Except as

expressly admitted, Navistar denies any remaining allegations in Paragraph 65.

66.     820 ILCS 115/1 states that:  The Act applies to all employers and employees in
this State, including employees of units of local government and school districts, but excepting
employees of the State or Federal governments.

**ANSWER:**

The statute referenced in Paragraph 66 speaks for itself, and to the extent the allegations

in Paragraph 66 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar

denies any remaining allegations in Paragraph 66.

67.     820 ILCS 115/4 states that:  All wages earned by any employee during a semi-
monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the
end of the pay period in which such wages were earned.  All wages earned by any employee
during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay
period in which the wages were earned.  All wages paid on a daily basis shall be paid insofar as
possible on the same day as the wages were earned, or not later in any event than 24 hours after
the day on which the wages were earned.  Wages of executive, administrative and professional
employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before
21 calendar days after the period during which they are earned.

**ANSWER:**

The statute referenced in Paragraph 67 speaks for itself, and to the extent the allegations

in Paragraph 67 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar

denies any remaining allegations in Paragraph 67.

68.     Under the Act, every employer shall pay the final compensation of separated
employees in full, at the time of separation, if possible, but in no case later than the next
regularly scheduled payday for such employee.

**ANSWER:**

The statute referenced in Paragraph 68 speaks for itself, and to the extent the allegations

in Paragraph 68 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar

denies any remaining allegations in Paragraph 68.

69.     820 ILCS 115/14 of the Act states that:  Any employer or any agent of an
employer, who, being able to pay wages, final compensation, or wage supplements and being
under a duty to pay, wilfully refuses to pay as provided in this Act, or falsely denies the amount
or validity thereof or that the same is due, with intent to secure for himself or other person any
underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or
defraud the person to whom such indebtedness is due, upon conviction, is guilty of a Class C
misdemeanor.  Each day during which any violation of this Act continues shall constitute a
separate and distinct offense.

**ANSWER:**

The statute referenced in Paragraph 69 speaks for itself, and to the extent the allegations

in Paragraph 69 vary therewith, Navistar denies them.  Except as expressly admitted, Navistar

denies any remaining allegations in Paragraph 69.

70.     Defendant is an employer in this state as defined under the Illinois Wage Payment
and Collection Act.

**ANSWER:**

Paragraph 70 includes only conclusions of law to which no answer is required.  To the

extent that Paragraph 70 contains any allegations, Navistar denies them.

71.     Defendant violated the Act by refusing to pay owed compensation to current and
former employees.

**ANSWER:**

Navistar denies the allegations in Paragraph 71.


**COUNT IV**
**FOR DECLARATORY RELIEF FINDING RELEASES INVALID**

72.     Plaintiff hereby incorporates all of the foregoing paragraphs.

**ANSWER:**

Navistar repeats and realleges the responses set forth above as if fully restated herein as and for its answer to Paragraph 72.

73.     Defendant has attempted to induce option holders to release their claims through an inadequate, coercive and oppressive offer which omits the information necessary for option holders to make a knowing and informed decision, with assistance of appropriate expert advice.

**ANSWER:**

Navistar denies the allegations in Paragraph 73.

74.     There is an actual controversy regarding whether the releases are invalid.

**ANSWER:**

Navistar denies the allegations in Paragraph 74.

75.     Putative class members were influenced by duress to accept the offer in exchange for the releases.

**ANSWER:**

Navistar denies the allegations in Paragraph 75.

76.     Further, it is outside Illinois public policy to uphold releases that waive claims under the Illinois Wage Payment and Collection Act.

**ANSWER:**

Navistar denies the allegations in Paragraph 76.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to 735 ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.     Declaring that the Stock Option Plan's 90 day expiration period for former employees is tolled by the blackout period;

C.     Declaring that the offer made to putative class members is inadequate, coercive and invalid;

D.    Preliminarily enjoining Navistar from accepting releases until this matter has been adjudicated;

E.    Finding that Navistar breached its obligations under the Company's Stock Option Plan and Stock Option contracts;

F.    Finding that Navistar breached its obligation of good faith and fair dealing to Plaintiff and the Class;

G.    Enjoining Navistar from allowing putative class members to release their claims;

H.    Awarding Plaintiff and Class members compensatory damages and exemplary damages in an amount to be proven at trial;

I.    Awarding Plaintiff and the Class pre-judgment interest, as well as reasonable fees and costs; and

J.    Awarding such other relief as this Court may deem just and proper.

**ANSWER:**

Navistar denies that Plaintiff is entitled to any relief, including but not limited to the relief sought in Plaintiff's Complaint.  Navistar further denies that this action is appropriate for class treatment.  Accordingly, Navistar asks that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered for Navistar and that Navistar be awarded its attorneys' fees and costs in defending against Plaintiff's Complaint, together with whatever other relief the Court may deem appropriate.

## AFFIRMATIVE DEFENSES

Navistar's affirmative defenses to Plaintiff's Complaint are set forth below.  By setting forth the following allegations and defenses, however, Navistar does not assume the burden of proof on matters and issues other than those on which Navistar has the burden of proof as a matter of law.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's action is not properly maintained as a class action because the requirements under federal law for class certification are not met and because certification of the proposed class would result in a denial of due process to Navistar as well as to some or all members of the proposed class.

## THIRD AFFIRMATIVE DEFENSE

The asserted claims are barred, in whole or in part, to the extent that there is no legal injury, including no injury to persons who could have exercised stock options during or after the purported "blackout period."

## FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are time-barred, in whole or in part, under the applicable statute of limitations, statute of repose and/or by the doctrines of waiver, estoppel and/or laches.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff and members of the proposed class may be barred, in whole or in part, from recovery because they have made statements or taken actions which estop them from asserting their claims.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff and members of the proposed class are barred from recovery, in whole or in part, due to the intervening cause of another party.

## SEVENTH AFFIRMATIVE DEFENSE

The claims in the Complaint are barred, in whole or in part, to the extent any injury sustained by Plaintiff or members of the proposed class was caused by their own conduct, whether negligent or otherwise.

## EIGHTH AFFIRMATIVE DEFENSE

This action is not appropriate for class treatment because the number of class members is not sufficiently numerous to meet the requirements of Fed. R. Civ. P. 23.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff and/or members of the proposed class may be barred from recovery, in whole or in part, if in this or other tribunals, they have brought actions and have received judgments or awards on some or all claims asserted herein.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff and members of the proposed class may not seek equitable relief because they have an adequate remedy at law.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, to the extent they have failed to mitigate damages and/or have caused some or all of the alleged damage of which they now complain.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the Supremacy Clause of the United States Constitution and by the doctrine of preemption. The purchase and sale of securities is governed by federal law that Navistar was required to follow.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and his counsel are not adequate representatives of the proposed class. The interests of Plaintiff and Plaintiff's counsel are antagonistic to the interest of class members, and Plaintiff's counsel has acted in a manner inconsistent with the obligations of class counsel to members of a proposed class.

## FOURTEENTH AFFIRMATIVE DEFENSE

If any persons or entities claiming to be members of the proposed class have released claims, they may be barred from recovery, in whole or in part, by such releases.

## FIFTEENTH AFFIRMATIVE DEFENSE

If any persons claiming to be members of the proposed class have resolved similar or the same claims as those alleged in the Complaint, they may be barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff and their counsel have failed to join as parties to this action all persons and entities who would be necessary parties for adjudication of the claims of Plaintiff and/or members of the proposed class.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's request for punitive damages is barred by the Commerce Clause of the United States Constitution, Article I, § 8, cl. 3, among other provisions.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The request for punitive damages in the Complaint is barred by reason of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

## NINETEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, to the extent that they engaged in unlawful, inequitable or improper conduct.

## TWENTIETH AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, by the doctrines of res judicata and collateral estoppel.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, by the doctrine of unclean hands.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, by the doctrine of impossibility.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The claims of Plaintiff and members of the proposed class are barred, in whole or in part, because, to the extent a contract even existed and to the extent Navistar is otherwise deemed to be in "breach" of such contract, Navistar was barred and prevented from performing by applicable law, including but not limited to securities laws and/or regulations.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, because Plaintiff and/or members of the proposed class were not employees of Defendant Navistar International Corporation.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, because the damages alleged are speculative and are therefore barred.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, by the doctrine of illegality.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, by the doctrine of substantial performance.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, by the doctrine of payment.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, because they lack standing.

## THIRTIETH AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, by the statute of frauds.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

The claims of Plaintiff and/or members of the proposed class are barred, in whole or in part, by federal law and/or company policies on insider trading.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Navistar has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses that govern the claims asserted by Plaintiff and on behalf of persons claimed to be members of the proposed class.  Navistar, therefore, reserves the right to raise additional defenses as appropriate.

WHEREFORE, Navistar prays:

1.    That Plaintiff and all members of the proposed class take nothing by reason of this suit;

2.    For costs of suit;

3.    For attorneys' fees against the nominally representative Plaintiff pursuant to applicable law;

4.    That the proposed certification of any class herein be denied; and

5.    For such other and further relief as the Court deems just and proper.

Dated:  August 18, 2008                    Respectfully submitted,


                                           /s/Robert C. Levels
                                           One of the Attorneys for Defendant
                                           Navistar International Corporation

Laurence H. Levine                         Cary R. Perlman
Maaike S. Almeida                          Mark S. Mester
LAURENCE H. LEVINE LAW OFFICES             Robin M. Hulshizer
190 South LaSalle Street, Suite 3120       Robert C. Levels
Chicago, Illinois 60603                    LATHAM & WATKINS LLP
Phone: (312) 291-7000                      Sears Tower, Suite 5800
Fax: (312) 291-7015                        233 South Wacker Drive
                                           Chicago, Illinois 60606
                                           Phone: (312) 876-7700
                                           Fax: (312) 993-9767

CH\1047897.3