UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAVI P. RAWAT and ELLIOTT LYONS, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| | ) | Case No. 08-cv-4305 |
| Plaintiffs, | ) ) | |
| | ) | Judge John W. Darrah |
| v. | ) ) | |
| NAVISTAR INTERNATIONAL CORP., | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Ravi Rawat and Elliott Lyons, along with their counsel, seek

certification of a class consisting of all current and former employees of Defendant

Navistar International Corp. ("Navistar") whose options expired during a trading

"blackout" imposed as a result of Navistar's having to restate its public financial

disclosures.

Two-and-a-half years into this litigation, however, only two out of the fifty-five

current and former employees whose options expired during the blackout express any

interest in this case. Fifty-two of them have accepted payment from Navistar and

expressly released the very claims Plaintiffs wish to assert on their behalf. In an effort to

bring these persons into this lawsuit nonetheless, Plaintiffs are seeking a declaratory

judgment that those agreements – agreements to which neither Rawat nor Lyons was a

party – are invalid. As explained below, Plaintiffs do not have standing to challenge

those agreements and, thus, cannot establish the elements required for class certification.

## BACKGROUND

Navistar is a publicly traded company. Its shares are listed on the New York Stock Exchange. Like many publicly traded companies, Navistar maintains stock-option plans for certain employees. Each option granted to an employee gives the holder of that option a contractual right to purchase a set number of shares at a set price (i.e., the "strike price"). The options are exercisable over time. Pursuant to the terms of the options agreements, all options expire ten years from the date of the grant or ninety days after leaving Navistar's employ, whichever comes first.

As the market price of the stock rises above the strike price of the option, the options' value increases. Employees can exercise these "in the money" options, purchase Navistar stock at the below-market strike price, and either sell it at the current market price for an immediate profit or hold it in hopes that the price climbs further upward.

On April 6, 2006, Navistar disclosed the existence of material inaccuracies in its publicly filed financial statements and the need to restate its financials for periods from 2005 and later. This disclosure triggered a "blackout period" during which employees were prohibited from exercising their stock options until Navistar completed its restatement.[1]

---

[1] Plaintiffs, who have the burden of establishing the facts necessary to support their Motion for Class Certification, repeatedly attempt to do so by citing to exhibits that do not support their asserted propositions. Here is one string of examples: First, Plaintiffs assert that some class members used a "hostile tone" in expressing disappointment regarding their expiring options. *See Plaintiff Rawat and Lyons' Motion and Memorandum in Support of Class Certification* ("Pl. Mem.") at 6 (citing Exs. G-H). But the two short emails attached as exhibits demonstrate neither disappointment nor hostility. Plaintiffs' next cite is to a price chart purporting to show that Navistar's stock price rose "from the mid-20s to over $76 per share when the blackout lifted." *Id.* (citing

In January 2008, Navistar sent a letter to "Holders of Navistar International Corporation Stock Options," informing them that options may have expired or may expire in the future; that the issue would be discussed with the Board of Directors after Navistar's financials were up to date; that it was uncertain as to what, if any, action would be taken; and that Navistar would communicate with the affected individuals regardless of its ultimate decision. *See* Ex. B to Am. Compl.

---

Ex. I). But the price chart shows only a single day of trading (July 7, 2010), during which the price climbed from approximately $47.50 to just over $50 per share. Plaintiffs' next statement is, "In comparable situations, many companies simply extended the exercise period until after the blackout period ended." *Id.* (citing Ex. J). They list five companies as examples and cite a single exhibit, which consists of a variety of securities filings and press releases without any indication as to what specific portions of those documents supports that proposition; one of the companies listed does not even appear to be represented in the exhibit. In the next sentence, Plaintiffs cite to two depositions and state that numerous Navistar employees and former employees saw their stock options expire during the blackout period. *Id.* (citing Exs. C-D). The cited portions of the depositions simply do not support Plaintiffs' proposition. Plaintiffs then assert that those employees were unable to exercise their vested options because they had expired, which resulted in an aggregate loss of about $15 million to the putative class. *Id.* at 6-7. Plaintiffs cite to an untitled, unauthenticated stack of spreadsheets. *See id.* (citing Ex. K). There is no explanation as to who prepared these spreadsheets or to explain how the exhibit proves that any vested options had expired. Moreover, none of the total figures listed on the final page of that exhibit amounts to the claimed $15 million loss.

Moving down a few lines in the Memorandum, Plaintiffs state, "On April 17, 2006, management argued to Navistar's Board's Compensation Committee that Navistar should simply extend the expiration date for options expiring during the blackout period until 30 days after the blackout period's end." *Id.* at 7 (citing Ex. M). The only language in Exhibit M regarding the blackout period indicates that Annette Freund presented a report regarding the impact of the restatement on Navistar's equity ownership programs and that she "discussed with the Committee various approaches to deal with outstanding in-the-money stock options that are scheduled to expire prior to the end of the blackout." *See* Ex. M to Pl. Mem. Contrary to Plaintiffs' representations, there is no mention of any specific proposal to extend options. At best, this string of inaccuracies shows carelessness; at worst, an intent to mislead.

3

On May 23, 2008, Plaintiff Rawat filed a lawsuit in this district. *See Rawat v. Navistar Int'l Corp.*, No. 08-cv-3038 (N.D. Ill.) (*Rawat I*). Shortly thereafter, on May 29, 2008, Navistar's financials were restated, ending the blackout period that began in April 2006.

On June 16, 2008, Navistar's Compensation Committee met and approved cash payments for all in-the-money stock options that expired during the blackout period. On June 20, 2008, Navistar sent a letter to all employees and former employees whose options expired during the blackout period (except Rawat, the only plaintiff in the action pending against Navistar).[2] Navistar offered to pay an amount for each expired option equal to the difference between the closing price on the day the option expired and the strike price. In exchange, each recipient was required to execute a release of all claims related to the expiration of those options, including, specifically, those claims asserted by Rawat in the pending lawsuit. Each recipient was given until August 1, 2008, to accept or reject the offer.

On June 26, 2008, Plaintiff presented an emergency motion, asking this Court to enjoin Navistar from contacting any putative class members and to void any releases submitted by putative class members. The Court heard arguments from both sides. To

---

[2] On June 18, 2008, the day Navistar's response to the complaint in *Rawat I* was due, Navistar filed an unopposed motion for an extension of time to file a response. The motion was granted, giving Navistar until July 8, 2008. Plaintiffs now contend that Navistar sought this extension "as a ruse to directly solicit class members to release their claims." Pl. Mem. 8-9. However, Plaintiffs do not explain how a two-week extension on the deadline for Navistar's motion to dismiss (which was based on a challenge to this Court's subject-matter jurisdiction) in any way enabled the settlement offers in question or why those same offers could not have been made after Navistar filed its motion to dismiss.

provide the recipients of the June 2008 letter sufficient time to evaluate their options and to address Plaintiffs' counsel's concern that the letter failed to provide appropriate information about the pending lawsuit, the Court ordered the parties to confer and prepare a supplemental notice to be sent to everyone who had received the June letter, advising them simply that a lawsuit has been filed on behalf of a putative class of which they might be members and providing Plaintiffs' attorneys' contact information. In light of Navistar's representation that four persons had signed releases, the Court also directed the parties to inform all recipients of the June letter that they could reconsider their decision prior to the August 1, 2008 deadline. A court-approved supplemental notice[3] containing this information was prepared jointly by the parties and sent to all members of the proposed class on July 1, 2008.[4]

After the hearing held on June 26, 2008, Navistar filed a motion to dismiss *Rawat I* for lack of subject-matter jurisdiction. *Rawat I*, Docket No. 20. Rawat had alleged federal jurisdiction in that case based on diversity of citizenship under the Class Action Fairness Act, *codified at* 28 U.S.C. § 1332(d), which requires, among other things, at least 100 members in the proposed plaintiff class. *Id.* Navistar asserted that there were fewer than seventy-five such persons. *Id.* On July 18, 2008, Rawat filed a parallel case in the Circuit Court of Cook County, Illinois.

---

[3] A copy of the July 1 letter is attached to this Opinion as Exhibit A.

[4] Contrary to Plaintiffs' blatant misrepresentation of what transpired at that hearing or the order that followed, this Court never made any finding that the letter was coercive and misleading. *See* Pl. Mem. 11.

On July 30, 2008 – two days before the August 1 deadline for the acceptance of the releases approved by this Court in *Rawat I* – Rawat apparently intended to present in the state court the same arguments previously raised in this Court and to ask the chancery judge to enjoin Navistar from accepting any releases from putative class members. *See* Docket No. 20, at 9.[5] However, Rawat never had the chance to present that argument in state court. Because the complaint he filed in that action alleged a broader class of plaintiffs than was alleged in *Rawat I* – consisting of *all* employees who were prevented from exercising their options during the blackout period (as opposed to only those whose options *expired* during that time), Rawat's alleged class now consisted of more than 100 members. Accordingly, Navistar removed the case to federal court on July 29, 2008.[6] The case was assigned to another judge in this district. *See Rawat v. Navistar Int'l Corp.*, 08-cv-4305 (N.D. Ill.) (*Rawat II*).

The day after Navistar removed the case to federal court, Rawat filed an Emergency Motion for a Temporary Restraining Order, a Motion for Preliminary Injunction, and a Motion to Certify Class. *See* Docket Nos. 9, 11, 13. The request was the same as in Rawat's Emergency Motion that had been argued and ruled upon by this Court on June 26, 2008: Rawat asked another federal judge in this district to enjoin Navistar from accepting any releases or to invalidate any releases that had been accepted.

---

[5] Unless otherwise indicated, all citations to docket entries are to those entered in the instant case.

[6] After removal, Plaintiff trimmed his proposed class definition back to what it was in *Rawat I*. He now seeks to certify a class consisting only of those employees whose options *expired* during the blackout period. In their opening brief, Plaintiffs claim there are more than fifty putative members. In their reply, they state that there may only be thirty-three remaining putative members.

At a hearing on July 30, 2008, Judge Der-Yeghiayan, acting as emergency judge, heard

arguments from both sides, denied Rawat's Motion for Temporary Restraining Order,

and ordered that the issue be presented to this Court, where *Rawat I* was still pending at

the time. Rawat did not do so. *Rawat II* was eventually reassigned to this Court and; on

September 23, 2008, *Rawat I* was voluntarily dismissed.

On August 18, 2010, the day before its response to Plaintiffs' Motion for Class

Certification was due, Navistar filed a Motion Concerning Contacts with Absent Class

Members. Navistar asserted that fifty-two of the fifty-five individuals whose options

expired during the blackout period accepted an offer of payment from Navistar in

exchange for an express release of all claims related to the expiration of their options

(including the claims asserted in this lawsuit) and that none of the individuals who were

given an opportunity to rescind their release opted to do so after receiving the jointly

prepared supplemental notice of July 1, 2008. Navistar intended to present that evidence

to the Court. Because Plaintiffs had vehemently objected to Navistar's contacting any

putative class members, however, Navistar sought the Court's permission. The Court

granted the motion at a hearing on August 24, 2010. Plaintiffs then brought a motion to

reconsider that decision, which was denied.[7]

Navistar presented the Court with declarations from Navistar's counsel and from

twenty-one putative class members. The putative class members stated that they received

_____

[7] Plaintiffs now object to the declaration of Livia Kiser, Navistar's counsel, as
inadmissible hearsay. In resolving Plaintiffs' motion for class certification, the Court did
not rely on Ms. Kiser's representation as to any statements made to her by putative class
members; the Court relied on the declarations of those putative members themselves.
Any statements in Ms. Kiser's declaration regarding statements made by additional
putative members were disregarded.

Navistar's June 20 letter, as well as the Court-ordered supplemental notice; that they executed a release and received payment for their expired options; that they are satisfied with their offer; and that they have no interest in seeking rescission of the release. *See generally* Docket Nos. 161, 164.

Plaintiffs' reply brief in support of its motion for class certification was filed shortly thereafter. The issue of class certification therefore is now fully briefed and ripe for ruling.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure provide the federal district court with broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (citation and internal quotation marks omitted). In determining whether the class-action requirements are met, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (*Szabo*). The court should not, however, make any determination as to the underlying merits of the claims. *Id.* at 677. The party seeking class certification has the burden of demonstrating certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

To obtain class certification, Plaintiffs must demonstrate that the proposed class satisfies all four elements of Federal Rule of Civil Procedure 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The court must

conduct a "rigorous analysis" to determine that each element of Rule 23(a) has been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

If Rule 23(a) is satisfied, the proposed class must also satisfy at least one of the three provisions under Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(2) and (b)(3). A class should be certified under Rule 23(b)(2) only if Navistar "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2). A class should be certified under Rule 23(b)(3) only if the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo*, 249 F.3d at 676.

## ANALYSIS

Plaintiffs have asked the Court to certify the following class:

> All Navistar employees and former employees whose stock options expired during Navistar's "blackout" period (April 6, 2006 – May 29, 2008).

Pl. Mem. 15.

As discussed above, there are only two such individuals who express any interest in joining this litigation: named Plaintiffs Ravi Rawat and Elliott Lyons.[8] More

---

[8] A third individual, Nick Matich, also joined this litigation as a party plaintiff but dismissed his claims after Navistar filed a counterclaim against him for violating a covenant not to sue. Matich was represented by the same counsel who represents Rawat and Lyons. Matich "agree[d] to dismiss his claims with prejudice (including his [Illinois

importantly, there are only three individuals (including the named Plaintiffs) who have not expressly *disclaimed* interest in this litigation. Of the fifty-three remaining employees whose options expired during the blackout period, fifty-two released the claims asserted in this action in exchange for a cash payment. *See* Ex. 17 to Def. Resp. Br. The sole remaining employee neither signed a release nor joined this litigation.

Plaintiffs persist in claiming that the releases should be declared invalid, arguing that the offer of payment by Navistar omitted certain material facts necessary for the recipients to make an informed decision. Many of these "material facts" concern Plaintiffs' theory that Navistar should have instead chosen to extend the options period, which would have proved more beneficial to the affected employees and, consequently, more expensive for Navistar. Plaintiffs also believe that Navistar should have informed each recipient that claims under the Illinois Wage Payment and Collection Act cannot be released. Additionally, Plaintiffs believe that Navistar should have disclosed that its Board of Directors had agreed in October 2006 to amend the Non-Employee Director Stock Option Agreement of one of its directors to extend the life of his options beyond the expiration of the blackout period.[9] Plaintiffs also argue that the agreements were signed under duress and that they are void as a matter of public policy and for lack of consideration.

---

Wage Payment and Collection Act] claim) and release[] Navistar in exchange for a cash payment and a mutual release of Navistar's counterclaim." *See* Docket No. 65. Class counsel expressly approved the dismissal. *See id.* Matich was dismissed without objection.

[9] Because that director is not an employee of Navistar, he is not a member of Plaintiffs' proposed class. Also, he later cancelled his options. *See* Ex. S to Pl. Mem.

However, the named Plaintiffs here do not have standing to challenge an agreement to which they were not a party. Settlement agreements are contracts. *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). Ordinarily, only parties to a contract have standing to challenge its validity. *In re Vic Supply Co.*, 227 F.3d 928, 930 (7th Cir. 2000). "Obviously, the fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract." *Id.* at 931. Neither of the named Plaintiffs accepted Navistar's offer or signed a release. Thus, neither of the named Plaintiffs could have suffered an injury arising from those agreements; and neither has standing to challenge the validity of those agreements. *Cf. Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 551 (5th Cir. 1988) (rejecting named plaintiffs' attempt to void releases of other employees because the plaintiffs who did not sign releases lacked standing to represent those who had).

A plaintiff who lacks standing to bring a claim in his own right cannot qualify as a class representative for a class of persons able to raise that claim. *Foster v. Center Twp. of LaPorte County*, 798 F.2d 237, 244 (7th Cir. 1986) (citing *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)). "It is well-settled that individuals who represent a class must allege that they personally have suffered from the injury alleged." *Midwest Cmty. Council, Inc. v. Chi. Park Dist.*, 87 F.R.D. 457, 461 (N.D. Ill. 1980).

Plaintiffs quote *Newberg on Class Actions* for the proposition that standing is not an impediment to class certification under Rule 23. *See* Pl. Mem. 5-6 (quoting Herbert B. Newberg et al., 1 *Newberg on Class Actions* § 2:7 (4th ed. 2010) ("The fact that the plaintiff now seeks to represent the rights of absent parties because the case or

controversy is common to those parties does not in any way create additional constitutional standing requirements.")). Plaintiffs miss the point. Newberg is discussing the fact that individual showings of standing are not required for *passive* class members (i.e., class members other than the named plaintiffs). *See id.* The treatise goes on to say that "fundamentally, the named plaintiff must have individual standing." *Id.* "Having standing which a class representative shares with the members of a class is another way of saying that the class representative is a proper party to raise a particular issue common to the class." *Id.*

Plaintiffs also argue that the release issue necessitates a merits-based determination that would be premature at the class-certification stage. As Plaintiffs note, "A court may not say something like . . . 'I'm not going to certify a class unless I think that the plaintiffs will prevail.'" *See* Pl. Mem. 14 (quoting *Szabo*, 249 F.3d at 677). However, the *Szabo* court ultimately reversed a district court's order certifying a class, stating that Rule 23 does not "prevent[] the district court from looking beneath the surface of a complaint to conduct the inquiries identified in that rule." *Szabo*, 249 F.3d at 677. A court presented with a motion for class certification is not required to assume that all members of a class are similarly situated. *Id.*

Clearly, it would be improper for the Court to deny class certification on the basis that Plaintiffs are unlikely to succeed on the merits of their claims. But standing is an issue that must be addressed *before* any determination as to the merits of Plaintiffs' claims. As explained above, it is undisputed that all but three potential class members have released their claims; and no one with standing to contest those releases (i.e., no one

12

who signed a release) has stepped forward to do so. To the extent the validity of the releases is a merits issue, it is an issue that Plaintiffs lack standing to raise.

Plaintiffs' reliance on *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1. 2000), also is misplaced. In that case, Judge Lefkow rejected the defendants' argument that "the class size should be eleven because all but eleven signed agreements releasing their claims." *Id.* at *3 (internal quotation marks omitted). In doing so, however, she expressly acknowledged authority in which courts have denied class certification where a significant number of putative class members had signed releases. *Id.* at *3 & n.4 (citing *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 14 (D.C. Cir. 1980) (*Melong*); *Caspar v. Cunard Line, Ltd.*, 560 F. Supp. 240, 243 (E.D. Pa. 1983)). Judge Lefkow held that the case before her was distinguishable from those cases "in that defendants' method of obtaining the releases may have intruded on the court's authority to oversee the notice to class members in the class certification process in a fair manner." *Id.* at *3. She also stated that the court was unable to "determine on the record before it how many or even if releases were signed by potential class members." *Id.* at *3 n.5.

Such concerns are not present in the instant case. First, the record contains releases signed by fifty-two of the fifty-five putative class members. Second, Plaintiffs' concerns regarding Navistar's method of obtaining releases were addressed back in 2008. After a lengthy hearing on the issue, the Court approved the parties' jointly prepared supplemental statement that went out to all putative class members. Third, Defendants

have presented the Court with declarations from twenty-one of the putative class members in which they expressly disclaim any interest in this litigation.

Rule 23 does not require the Court to turn a blind eye to the fact that Rawat, Lyons, and their counsel are the only ones who want to push forward with this proposed class action. As discussed below, Plaintiffs' lack of standing to challenge the releases of their fellow employees is fatal to their ability to show that a class should be certified under Rule 23.

First, Plaintiffs cannot show that the proposed class is "so numerous that joinder of all members is impracticable" as required by Rule 23(a)(1). It is undisputed that fifty-two of the fifty-five putative class members accepted payment from Navistar and released their claims. (Plaintiffs take issue with those releases on several grounds; but, as discussed above, they lack standing to challenge their legality.) That leaves one absent putative class member. It would not be impracticable to join her as a plaintiff with Rawat and Lyons.

Moreover, the declarations of twenty-one current and former Navistar employees further demonstrate Plaintiffs' inability to establish numerosity. With full knowledge of the pendency of Plaintiffs' suit regarding the stock options, those employees expressly disclaimed any interest in this litigation. Even if a class could otherwise be certified for the remaining thirty-four individuals, the class would not be so numerous that joinder would be impracticable. "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (citations omitted). Joinder of fewer than forty persons can still be impracticable

based on other factors, but Plaintiffs have not shown that any such factors are present here. All potential members are clearly identified; there is no indication that any person would risk inconsistent verdicts by pursuing their own actions; and Plaintiffs have not established that the size of individual claims or the individuals' financial resources would prevent them from litigating their claims.

Plaintiffs' lack of standing to void others' releases also prevents them from meeting Rule 23(a)(3)'s requirement that class representatives' claims must be typical of those of the class. Although Plaintiffs' substantive claims as to the expired options are typical of all employees similarly affected, fifty-two of the fifty-five employees would also have to cause the releases they signed to be declared void. Plaintiffs, who did not sign those releases, would not have to do so. Thus, Plaintiffs' claims are not typical of those of the class. *See Greeley v. KLM*, 85 F.R.D. 697, 701 (S.D.N.Y. 1980) ("Having refused to settle, plaintiff has no personal reason to be concerned with the means by which KLM induced settlements from others and therefore has no real interest in proving those settlements were wrongfully obtained. Thus his interest is not coextensive with the interests of the class members who settled, and his claim is not typical of those of the class."); *Melong*, 643 F.2d at 15 ("[T]he existence of such releases adds new and significant issues to actions brought on the underlying claims. When the purported class representative has not executed a release and need not establish that the release is defective in his individual case, serious questions are raised concerning the typicality of the class representative's claims and the adequacy of his representation of other class members.").

15

As *Melong* holds, because Plaintiffs here did not sign releases, questions are also raised as to their ability to adequately represent other class members who signed releases. Rule 23(a)(4) requires class representatives who can "fairly and adequately protect the interests of the class." "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

Here, Plaintiffs clearly have interests that are in conflict with those of other class members. Plaintiffs argue that other putative class members would not be prejudiced if the Court found the releases to be invalid because Plaintiffs merely seek to have the releases declared "voidable" (not void). They contend that such an order from the Court would present each individual who signed the release with the option of voiding the release and joining the litigation or doing nothing, keeping the payment, and effectively opting out of this litigation. However, it is clear that Plaintiffs are seeking to have the releases declared invalid. Their Amended Complaint specifically alleges "an actual controversy regarding whether the releases are *invalid*," asks the Court "to *nullify* any releases received" by Navistar, and prays for judgment "*[v]oiding* releases accepted by Navistar in connection with this action." Am. Compl. ¶¶ 2, 74, D (emphasis added); *see also* Pl. Mem. 7 (arguing that releases are unsupported by consideration and, thus, *void*).

Therefore, Plaintiffs' interests are at odds with the interests of persons who wish to retain the benefit of the releases they signed over two years ago. At the very least, there is a question as to Plaintiffs' ability to adequately represent other class members.

Ultimately, because Plaintiffs do not have standing to challenge the releases, they remain a class of two (or three, if the other person who did not sign the release is to be counted). Navistar offers numerous additional arguments as to why Plaintiffs cannot meet their burden of establishing the elements under Rule 23(a) and why Plaintiffs cannot demonstrate that certification is appropriate under Rule 23(b). Based on the above analysis, it is unnecessary to address them.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Class Certification is denied.

Date: January 20, 2011

JOHN W. DARRAH
United States District Court Judge

# Exhibit A

**NAVISTAR**

Navistar, Inc.
4201 Winfield Road
Warrenville, IL 60555  USA

P : 630-753-3052
W : navistar.com

Annette M. Freund
Vice President,
Compensation, Benefits
and HR Support

July 1, 2008

## NOTICE:  THIS MAY AFFECT YOUR LEGAL RIGHTS

To all recipients of the June 20, 2008 letter from Annette Freund, Vice President, Compensation, Benefits and HR Support of Navistar International Corporation:

Dear Elliott J. Lyons:

You received a letter offering a cash payment and soliciting your release of claims relating to Navistar Stock Options.

Releases sent to the Company before August 1, 2008 will not be effective until August 1, 2008.  Anyone who had previously sent releases to the Company may reconsider your release until August 1, 2008.  If you choose to reconsider, you have until August 1, 2008 to deliver a revocation to Mr. Howard Kuppler, Navistar International Corporation, 4201 Winfield Road, P.O. Box 1488, Warrenville, IL 60555.

A class action case, *Rawat v. Navistar Int'l Corp.*, 08cv3038 (N.D. Ill.), seeks to certify a class consisting of persons with vested stock options that expired during the period when trading restrictions were in place.  The lawsuit claims that Navistar is obligated to compensate you for any resulting harm because of your inability to exercise your options before they expired.

For any inquires regarding *Rawat v. Navistar Int'l Corp.*, you may contact the following counsel:

**Clinton A. Krislov, Esq.**
**KRISLOV & ASSOCIATES, LTD**
**Civic Opera Building**
**20 North Wacker Drive, Suite 1350**
**Chicago, IL 60606**
**Phone: (312) 606-0500**
**Fax:    (312) 606-0207**
clint@krislovlaw.com

You may also contact legal counsel of your choice.

*Annette*

**LYONS 0001**