# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RAVI RAWAT** and **ELLIOTT LYONS**, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 4305 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| **NAVISTAR INTERNATIONAL** | ) | Magistrate Judge |
| **CORPORATION**, | ) | Martin C. Ashman |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Ravi Rawat and Elliott Lyons ("Plaintiffs") have brought suit against Defendant Navistar International Corp. ("Navistar") for breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Illinois and Indiana Wage Payment Collection Acts. Plaintiffs are former employees of Navistar who owned vested stock options which they were unable to exercise due to a "blackout" period allegedly caused by "Navistar's failure to have current financial reporting as required by federal law." (Pltf's. First Amend. Compl. at ¶ 2). The facts surrounding this claim are fully discussed in the District Judge's denial of Plaintiffs' motion for class certification and are not set forth in detail here. *See* Dckt. No. 169. Currently before the Court is Plaintiffs' motion to compel Navistar to respond in greater detail to their First Requests for Production. The Court rules on this motion under District Judge John W. Darrah's referral for a decision pursuant to N.D. Ill. Rule 72.1. On August 2, 2011, the Court held a hearing on the motion, and after careful consideration of the parties' briefs and arguments, the Court finds that Plaintiffs' motion should be granted.

## I.  <u>Legal Standard</u>

A party may file a motion to compel under Fed. R. Civ. P. 37 whenever another party

fails to respond to a discovery request or when its response is insufficient.  Fed. R. Civ. P. 37(a).

Courts have broad discretion in resolving such disputes and do so by adopting a liberal

interpretation of the discovery rules.  *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D.

371, 375 (N.D. Ill. 1999).  Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense."  Fed. R. Civ. P. 26(b)(1).  Discoverable information is not limited to evidence

admissible at trial.  Instead, such information is relevant "if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." *Id.*  However, while the scope of

permissible discovery is broad, it is not unlimited.  A court can limit discovery if the court

believes it is unreasonably cumulative, if the party seeking discovery has already had ample

opportunity to do so, or if the burden of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(2).

When, as here, a case arises under a court's diversity jurisdiction, the court applies the

substantive law of the state in which its sits.  *Republic Tobacco Co. v. North Atlantic Trading

Co*., 381 F.3d 717, 731-32 (7th Cir. 2004).  The federal rules of procedure and evidence,

however, invariably apply to the litigation itself, "whether or not they determine the outcome."

*Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995).  Most privileges, including

the attorney-client privilege, are governed by state law.  Fed. R. Evid. 501; *Dunn v. Washington

County Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005).  The work product doctrine, however, is

- 2 -

analyzed solely on the basis of federal law. *Abbott Labs. v. Alpha Therapeutic Corp.*, 200

F.R.D. 401, 405 (N.D. Ill. 2001).

## II. Discussion

Plaintiffs' First Requests for Production seeks three sets of documents. The first involves discovery Navistar already produced in an earlier securities class action filed in the Northern District of Illinois against a number of defendants, including Navistar, as *Norfolk County Retirement System et al. v. Ustian et al.*, No. 07 C 7014 ("*Ustian*"). That case proceeded before District Judge Robert Gettleman and was eventually settled on May 25, 2011. Plaintiffs also ask the Court to order Navistar to turn over documents it has already produced to the Securities and Exchange Commission ("SEC") as part of the SEC's investigation of Navistar. *In the Matter of Navistar Int'l Corp.*, Administrative Proceeding No. 3-13994 ("the SEC proceeding"). The SEC inquired into matters that led to the need for Navistar to issue its 2005 Form 10-K on December 10, 2007 ("the Restatement"), which detailed the results of the restatement of the company's financials for 2003, 2004 and the first three quarters of 2005. As described by Magistrate Judge Nolan in *Ustian*, "[t]he Restatement disclosed that over that three-year period, Navistar had misstated its financial position and results of operations by billions of dollars." *Norfolk County Retirement Sys. v. Ustian*, No. 07 C 7014, 2010 WL 1489996, at *2 (N.D. Ill. April 13, 2010). Plaintiffs' final request seeks documents Navistar will rely on to support its affirmative defenses.

### A. The Affirmative Defense Documents

- 3 -

In its initial answer to Plaintiffs' complaint, Navistar asserted thirty-two affirmative defenses. These included a substantial number of defenses aimed at the potential class proposed by Plaintiffs, theories such as estoppel, res judicata, and various constitutional provisions, and the defenses of illegality and impossibility. Plaintiffs asked Navistar to identify documents in its possession that were relevant to these defenses, but Navistar declined to do so based on the grounds that such production would be unduly burdensome and would involve items protected by the work product doctrine. The company makes the same claims in its response to the motion to compel.

The work product doctrine protects documents that an attorney or a representative of a party prepares in anticipation of litigation in order to prepare or analyze a client's case. Fed. R. Civ. P. 26(b)(3); *Sandra T.E. v. South Berwyn Sch Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). Its protection is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) (citation omitted). A lawsuit need not be underway for the doctrine to apply "provided the prospect of litigation [is] not remote." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006). This protection only prevents the disclosure of protected documents or communications, however, not the underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). As with the attorney-client privilege, the party asserting the work product doctrine has the burden of showing all of its elements. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). "A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 64, 86 (N.D. Ill. 1992) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)).

- 4 -

Navistar's reliance on the work product doctrine fails to meet this well-established standard on several grounds. The company does not identify any specific document that it claims is protected by the privilege, relying instead on the kind of generalized claim that has been rejected by courts in this District as insufficient to show that a privilege applies. *See Coltec Inds., Inc. v. Am. Motorists Ins. Co*., 197 F.R.D. 368, 371 (N.D. Ill. 2000) ("A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis."); *Schachar v. Am. Acad. of Ophthalomology, Inc*., 106 F.R.D. 187, 191 (N.D. Ill. 1985) ("The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper."); *Allendale Mut. Ins. Co*., 145 F.R.D. at 86; *MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *10 (N.D. Ill. Jan. 20, 2011). Navistar bears the burden of showing, for example, what documents are at issue, when they were created, and that the principal motive behind the creation of the documents was to aid in possible future litigation. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983). By not addressing these issues, Navistar has not shown why the privilege it relies on applies. Indeed, if the Court were to agree with Navistar, it would have no idea what it was ordering to be protected from discovery.

The last fact underscores that Navistar has not provided a privilege log either in response to Plaintiffs' discovery requests or as part of its response to the motion to compel. Once litigation begins, Fed. R. Civ. P. 26(b)(5) requires a party served with discovery to provide a privilege log concerning relevant documents it believes are responsive but protected by a privilege. The Rule states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). *See also United States ex rel. Liotine v. CDW-Government, Inc.*, No. 05-033, 2010 WL 2165958, at *1 (S.D. Ill. May 28, 2010) ("The requirements of Rule 26(b)(5) are clear. Documents which are withheld under a claim of privilege must be entered into a privilege log so that the parties and the Court can determine the propriety of the claim of privilege."). A party's failure to do so can waive a privilege altogether. *See Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("[P]arties and their counsel are cautioned that a timely and adequate privilege log is required by the federal rules, and that failure to serve an adequate privilege log may result in a waiver of any protection from discovery."). Although the Court does not believe that Navistar should be found to have waived its privileges, the company's omission of a log or an explanation of why such a log could not be provided requires a finding at this point that Navistar has not shown why the work product doctrine applies to any of the documents responsive to Plaintiffs' request.

Perhaps in recognition of this fact, Navistar takes a somewhat different approach and relies on the Third Circuit's decision in *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985). In *Sporck*, the defendant produced hundreds of thousands of documents in response to discovery requests. At the defendant's deposition, plaintiff's attorney demanded to know what documents the defendant's attorney had selected for review to prepare the defendant for the deposition. The

Third Circuit found that, even though the documents themselves did not contain any protected work product, identifying the attorney's document selection process involved opinion work product because it would reveal counsel's trial strategy and thought process concerning the defendant's case. *Sporck*, 759 F.2d at 315-17.

Navistar's reliance on *Sporck* is misplaced under the facts of this case. *Sporck* involved opinion work product, which involves counsel's mental impressions and opinions, as opposed to ordinary work product, which "includes raw factual information." *Hollinger Int'l, Inc. v. Hollinger Inc.*, 230 F.R.D 508, 512 (N.D. Ill. 2005) (citation omitted). Unlike ordinary work product, whose protections can be overcome by the showing of a substantial need for the information, *id.* at 512, "immunity from discovery for opinion work product is absolute or nearly absolute." *United States ex rel. Yannacopoulos v. General Dynamics*, 231 F.R.D. 379, 382 (N.D. Ill. 2005). Navistar does not show how the greater protections afforded opinion work product apply here and fails to distinguish *Sporck* from other cases that have disagreed with its conclusion that the mere grouping of documents by counsel constitutes opinion work product. The First Circuit, for example, has criticized *Sporck*'s reasoning as flawed "because it assumes that the revelatory nature of the sought-after information is, in itself, sufficient to cloak the information with the heightened protection of opinion work product. That is simply not the case; much depends on whether the fruits of the screening would soon be revealed in any event." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988); *see also Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 374 (D. Colo. 1993); *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 539 (D. Kan. 1989).

This Court agrees with the First Circuit's reasoning that the context in which the selection process takes place is important in determining if opinion work product is involved. *Sporck* involved the preparation of a deponent by his own attorney, an act that would not ordinarily give rise to further inquiry at a future date. By contrast, this case involves affirmative defenses that Navistar will be required to substantiate with evidence if it intends to rely on them at trial. In fact, Navistar conceded at the hearing that it would be providing a complete exhibit list of this evidence to Plaintiffs before trial, and it presents no argument on why the strict protection given to opinion work product should apply if the company ultimately intends to turn over the documents.

The Court, therefore, agrees with other courts in this Circuit that have ordered the production of documents relevant to affirmative defenses. *See Burnett & Morand P'ship v. Estate of Youngs*, No. 3:10-cv-3, 2011 WL 1237950, at *3 (S.D. Ind. April 4, 2011) ("[T]he purpose of the discovery rules is to bring to light the parties' positions in an informed and controlled manner that winnows down the resolution of a dispute by identifying those facts that are clearly in dispute, and those legal theories that are being debated.") (internal quote omitted). The Indiana court recognized that turning over documents responsive to a defense might reveal some of an attorney's thought process. *Id*. To a certain extent, however, so do the thirty-two affirmative defenses that Navistar has already asserted in this case. If Navistar believes that producing the documents supporting these claims would reveal its counsel's thoughts more than the claims themselves do, and would constitute protected opinion work product, it bears the burden of stating such an argument and demonstrating why that is the case. It has not done so

with any particularity, and the Court finds that Navistar has not shown why the documents in question are protected from discovery.

Navistar also fails to show why the production of these documents would be unduly burdensome. The company claims that it should not be required to sift through the 738 items already produced as well as "other documents" to find those that relate to its affirmative defenses. Presumably, Navistar will have to do just that at some point if it actually intends to use the documents as part of its affirmative defenses at trial or, as the company stated at the hearing, when it turns them over before trial. The fact that Navistar has asserted thirty-two affirmative defenses could involve a substantial number of documents, but Navistar itself has chosen the defenses it relies on. Moreover, several factors weigh against finding that producing these documents would constitute a serious burden on Navistar. Many of the defenses, for example, concern the proposed class members, and Judge Darrah's denial of class certification makes those defenses moot, at least insofar as they relate to persons other than the named Plaintiffs. Moreover, Navistar stated at the hearing that it was agreeing to drop the defenses of illegality and impossibility, thereby further reducing the burden imposed on Navistar.

For these reasons, therefore, Plaintiffs' motion is granted on the affirmative defense issue. If Navistar believes these documents should be protected from disclosure by a privilege, it must submit a privilege log with its document production identifying those documents it believes are protected by the work product privilege. In so doing, however, Navistar must provide a log with sufficient information to make a meaningful privilege review possible. This includes details concerning the "date, author and all recipients of the document, subject matter, purpose, and an

explanation as to why the document should be privileged and not produced in discovery."[1]

*Coltec*, 197 F.R.D. at 373.


### B.     The *Ustian* and SEC Documents

Plaintiffs also seek documents Navistar earlier produced in *Ustian*, *supra*, and the SEC investigation.  The SEC documents involve materials Navistar collected and submitted to that agency as part of its investigation of events that gave rise to Navistar's need to restate its finances.  *Ustian* involved a securities action brought on behalf of all individuals who had purchased Navistar's common stock from February 14, 2003 through July 27, 2006.  The plaintiffs in that case alleged that Ustian and the other defendants violated Rule 10b-5 and Section 20(a) of the Securities Exchange Act, 28 U.S.C. § 1331 *et seq*., by virtue of actions that led to the decline in the value of the company's stock.  Plaintiffs claimed, for example, that Navistar's internal controls over financial reporting were materially deficient from 2003 through the April, 2006 announcement that Navistar would need to restate its financial results.


### 1.     Relevance

Navistar first objects to Plaintiffs' request for these documents on the ground that they are not relevant to the issues Plaintiffs assert here.  According to Navistar: (1) Plaintiffs do not need the documents they seek in order to determine what caused the blackout; (2) the blackout's cause

---

[1]  The Court agrees with *Coltec*'s stress on the need for outlining these elements: "It may be overstating the obvious, but in this court's experience it is necessary; describing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery."  *Coltec*, 197 F.R.D. at 373.

is not even relevant; and, (3) most of the documents themselves have little relevance to the causation issue in the first place.

These contentions are not entirely devoid of merit, and the Court is mindful that Plaintiffs seek an exceptionally wide array of evidence that the Court, necessarily, has not reviewed. Balanced against this, however, are two guiding principals. First, in ruling on a motion to compel, a court "should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). This includes consideration of the burdens of proof at stake, an issue that plays a crucial role in the Court's consideration of Navistar's arguments below. The parties' arguments must also take account of the second, and critical, principle that relevance is construed more broadly under Fed. R. Civ. P. 26(b)(1) than it is at trial. Evidence is relevant for discovery purposes if there is any possibility that it could be relevant to the subject matter of the case. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). This means that discovery is not limited to the specific issues raised in the parties' pleadings "because discovery itself is designed to help define and clarify what the issues are." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). It is also not constrained in a narrow way by a case's merits, "for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id*; *see also Murata Mfg. Co., Ltd. v. Bel Fuse, Inc*., 422 F. Supp.2d 934, 945 (N.D. Ill. 2006). Accordingly, courts should approach discovery requests with the understanding that even if the relevance of what is sought is not entirely clear, discovery may still be warranted under the specific facts of a case. *See Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004) ("If relevance is in doubt, courts should err on the side of permissive discovery.").

With these principles in mind, the Court finds that Plaintiffs have shown that the documents they seek are sufficiently relevant for discovery purposes to warrant their discovery. The parties disagree about how "causation" should be viewed in this case, but that issue is central to the positions of both sides. Navistar argues that discovery is not necessary to show what caused the blackout period that prevented Plaintiffs from exercising their options. It claimed at the hearing that the Restatement caused the blackout but that Navistar did not "cause" the Restatement. Instead, Navistar contended that the need to restate its financials was caused, at least in part, by third parties such as outside auditors and accountants, and that Navistar was not itself at fault. Plaintiffs strongly disagree with this analysis of events and claim that it was not the Restatement itself, but the *need* to restate that "caused" the blackout, a point Navistar essentially concedes in its brief. *See* Def's. Resp. at 2 ("Navistar's need to restate its previous financials was the cause."). Plaintiffs argue that they need data such as information concerning "control deficiencies" allegedly contained in the *Ustian* and SEC documents to show that Navistar's actions gave rise to the need to restate.[2]

---

[2] Although the parties have not clarified exactly what "control deficiencies" and other terms used at the hearing and in the briefs specifically refer to, the Court assumes that they encompass allegations similar to the conclusions made by the SEC in its investigative report. The SEC stated:

These findings do not reflect a coordinated scheme by senior management to manipulate the Company's reported results or conduct committed with the intent of personal gain. Instead, these findings reflect misconduct that resulted in large part from a deficient system of internal controls, evidenced in part by insufficient numbers of employees with accounting training, a lack of written accounting policies and procedures, and flaws in the Company's organizational structure. The internal control deficiencies, in turn, resulted from senior management's failure to dedicate sufficient resources and attention to the adequacy of Navistar's accounting and reporting functions. The deficient internal controls failed to

(continued...)

In this sense, the Court agrees with Plaintiffs that Navistar's actions that allegedly created the need to restate its financials are relevant to their legal claims. Navistar claims that discovery on this issue is not relevant because Plaintiffs' underlying legal theory is itself flawed. Plaintiffs plead that Navistar's actions breached the options' contractual agreements "by failing to permit [Plaintiffs] to exercise their options and purchase shares during the term of the option." (First Amend. Compl. ¶ 56). Navistar argues that Plaintiffs' legal theories are misplaced because, instead of alleging that Navistar acted with an intent to prevent Plaintiffs from exercising their options, they contend "that because the blackout was 'caused' by Navistar by virtue of the need to restate its financials, the Company should be liable for options that expired during the blackout period." (Def's. Mot. at 6). But whether Plaintiffs' legal theories have merit or not is a substantive issue that is not under consideration here. The only issue before this Court is whether Plaintiffs are entitled to documents that are potentially relevant to its *actual* argument that Navistar's conduct gave rise to what Plaintiffs allege constitutes a breach of contract and a breach of the covenant of good faith and fair dealing. As noted above, discovery is not limited to the merits of a plaintiff's claims but includes an array of fact issues that may arise in the course of litigation. *Oppenheimer*, 437 U.S. at 351. Plaintiffs have made it very clear that they seek evidence on what gave rise to the need for Navistar to restate its financials, and whether or not they are correct that Navistar is liable to them because of acts that caused the blackout does not limit the scope of permissible discovery in the manner claimed by Navistar.

---

[2](...continued)
provide adequate checks on certain employees' efforts to meet the Company's financial targets.

(Def's. Resp., Ex. 3 at 2).

Navistar complains that the *Ustian* items will not shed light on this issue because the documents it produced in that proceeding were for the most part connected with "corrective disclosures," the last of which took place in June, 2006. But that is just what Plaintiffs are seeking, as at least some of their allegations concern the events in 2003, 2004, and 2005 that gave rise to the need for Navistar to restate its earnings altogether. Navistar also claims that the SEC documents involve issues unrelated to the cause of the blackout, though it admits that some categories of information relate to accounting policies and other events that led up to the Restatement. Plaintiffs made clear at the hearing that they could not use the SEC's consent decree itself as direct evidence of their version of Navistar's alleged malfeasance because Navistar agreed with the SEC's order only for the limited purpose of that proceeding. Accordingly, Plaintiffs essentially aim to reprove at least some of the SEC's findings as part of their attempt to show how Navistar allegedly breached its contractual obligations to them.

Federal Rule of Evidence 401 states that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. It is certainly possible that the items Navistar describes as part of the SEC and *Ustian* disclosures – analysts' reports, SEC filings, and corrective disclosures – would meet this standard by shedding light on what the alleged "management malfeasance" that Plaintiffs claim ultimately prevented them from exercising their options involved. That is all that Rule 26(b)(1) requires for non-privileged documents to be discoverable, as that rule is construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any

issue that is or may be in the case." *Oppenheimer*, 437 U.S. at 351. Accordingly, the Court

finds that both the *Ustian* and the SEC documents are relevant to Plaintiffs' claims.


        2.     <u>The Burdens of Production</u>

Of greater concern to the Court is Navistar's argument that producing the *Ustian* and SEC

documents would be unduly burdensome. There is no question that responding to Plaintiffs'

requests could be a substantial undertaking, and the Court does not minimize the fact that

Navistar alleges that *Ustian* included 11,000 documents and that the SEC production contains

close to 4 million pages. Notwithstanding, Navistar still bears the burden of proof on this issue.

*Schachar*, 106 F.R.D. at 190 ("The party objecting to a discovery request bears the burden of

showing that the request is unduly burdensome."). In order to do so, Navistar must do more than

make broad assertions that producing the documents would be difficult, and the fact that an

exceptionally large number of documents is involved does not speak for itself on this issue, at

least under the circumstances noted below. "[I]f a party is to resist discovery as unduly

burdensome, it must adequately demonstrate the nature and extent of the claimed burden by

making a specific showing as to how disclosure of the requested documents and information

would be particularly burdensome." *Perry v. City of Gary, Ind.*, No. 2:08-CV-280, 2009 WL

2253157, at *4 (N.D. Ind. July 27, 2009).

Navistar has not met this standard as it relates to the *Ustian* documents. The company

has already produced these once, and it provides no information on what it would have to do to

comply with Plaintiffs' request. Navistar does not state, for example, whether a copy of its

earlier production already exists, what records of its production were retained, or other specific

information concerning the burden of responding to Plaintiffs. Presumably, Navistar will not be required to re-collect the documents as if they were being assembled for the first time. Nor need it sift through them to identify items it believes to be relevant to this case; Plaintiffs only ask for the documents Navistar did, in fact, produce in *Ustian*, and the company can turn those documents over to Plaintiffs without a relevance review.[3] Accordingly, Navistar has not shown how the burdens of producing these documents outweigh Plaintiffs' need to view them.

Plaintiffs also seek documents that Navistar previously collected and submitted in 2006 and 2007 as part of the SEC's investigation of events that led up to Navistar's need to restate its earnings. Navistar's principal argument concerning these documents is not merely that they involve a large number of documents, though it understandably relies on that fact. Navistar also contends that the burden is enhanced by the need to review the SEC production to determine which documents are protected by a privilege, including the attorney-client privilege and the work product doctrine. Moreover, the company argues, its burden is disproportionate to Plaintiffs' need to have these documents because at best the documents only have a limited

---

[3] In a footnote in its brief, Navistar suggests that privilege issues have been raised concerning the *Ustian* documents. (Def.'s Resp. at 11 n.4). The Court disagrees. Although Navistar's general response to Plaintiffs' discovery requests includes a list of standard objections – burdensomeness, privilege, breadth, *etc.* – they are not directed to any particular request. It is well established that such generalized, non-specific objections are improper and do not act as a substitute for an individualized response to each of Plaintiffs' requests. *See*, *e.g.*, *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 306-07 (N.D. Ill. 1997) (denying similar objections as "pat, generic, non-specific" responses that "are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."); *United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. March 4, 2010) (finding that such "boilerplate responses" are waived as improper). By contrast, Navistar's specific response to Request No. 1 does not claim that potentially relevant documents are privileged. Thus, no privilege issue has been properly asserted concerning this discovery request.

relevance to Plaintiffs' allegations. The Court has already rejected the basis for the last of these arguments in its discussion above and turns to Navistar's two remaining grounds.

Navistar's privilege argument faces strong headwinds that the company does not address. Courts in this District have long held that "the mere claim of privilege does not justify a refusal to identify properly the information and documents requested by plaintiff." *AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 256 (N.D. Ill. 1981) (internal citation omitted). In other words, a party served with discovery requests must submit a privilege log in order to assert the privileges it relies on. As explained above, Navistar has not done so, either in response to Plaintiffs' requests or as part of the motion to compel. Navistar's argument that some *future* privilege review should not be imposed on it because of the burdens that would be entailed overlooks that the time for asserting and proving privileges is now, not at an unspecified later date. The Court notes that Navistar has not argued that additional time was needed to compile a privilege log, nor has it provided any other explanation of why it has not addressed this issue in a more specific manner. As this Court has stated, "[i]f a party fails to comply with the need to provide such a privilege log, that party fails to establish that the privilege applies." *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2006 WL 3370700, at *8 (N.D. Ill. Nov. 17, 2006) ("The fact that the compilation of such a log is burdensome will not obviate the need for the log, particularly because there are no presumptions operating in the discovery opponent's favor.") (quoting *Abbott Labs. v. Alpha Therapeutic Corp.*, 97 C 1292, 2000 WL 1863543, at *3 (N.D. Ill. Dec. 14, 2000)).

Navistar's only specific reference to the privilege issue is not entirely clear. The company states: "The SEC documents would also need to be reviewed for privilege, as numerous

privileged documents were produced to the Commission pursuant to a strict confidentiality agreement." (Def's. Resp. at 10). Navistar explains that it submitted these documents to the SEC pursuant to the selective waiver doctrine, which provides that a party may submit potentially privileged documents to a governmental agency without waiving the privilege in relation to third parties at a later date. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 430 (N.D. Ill. 2006). This explanation implies that Navistar knows that at least some of the produced documents are protected, though it is unaware of the full extent of how the various privileges may apply. This suggests that Navistar did not conduct a thorough privilege review as part of the SEC production but that it did learn that some of the produced documents were protected.[4]

Even assuming that the selective waiver doctrine applies, Navistar is still fully obligated to assert and prove all the privileges it relies on in this proceeding.[5] That burden falls on Navistar, not the Court or Plaintiffs. If Navistar is unable to show these privileges with specificity because of the large number of documents it claims are involved, it could have made some showing as to why it needed time to undertake a more complete privilege review. In the alternative, the company could have explained the nature of the privilege review that took place by its outside counsel in the SEC production and provided at least a limited privilege log covering those documents that Navistar suggests it knows are privileged. Navistar has not made

---

[4] At the hearing, Navistar described the production as including "tons and tons" of privileged documents, again indicating that Navistar is already aware of how specific privileges apply to a substantial number of items it produced to the SEC.

[5] The Seventh Circuit has not addressed whether the selective waiver doctrine applies in this Circuit, but at least one court has adopted it when a party submits its documents pursuant to a confidentiality agreement. *See Jaffe*, 244 F.R.D. at 432-33.

such arguments, and the Court has no evidence of why the attorney-client privilege and the work product doctrine apply or what documents they arguably protect from discovery.

Without such arguments, the Court is left only with generalized work product claims that are unavailing under federal law. *See Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990); *White*, 970 F.2d at 334; *Wilstein*, 189 F.R.D. at 379. Illinois law, which governs the application of the attorney-client privilege in this diversity action, also holds that simply asserting a privilege is insufficient. *See Ekstrom v. Temple*, 197 Ill.App.3d 120, 127, 553 N.E.2d 424 (Ill.App.Ct. 1990) ("[The] mere assertion that the matter is confidential and privileged will not suffice.") (quoting *Cox v. Yellow Cab Co*., 161 Ill.2d 416, 419-20, 337 N.E.2d 15 (1975)); *see also Waste Mgt., Inc. v. Int'l Surplus Lines Ins. Co*., 144 Ill.2d 178, 190, 579 N.E.2d 322 (1991) (stating that Illinois has "a strong policy encouraging disclosure" and confines the privilege "within the narrowest possible limits."). In the absence of a privilege log, examples of privileged documents, or specific arguments from Navistar, the Court has no basis on which to find that any part of the SEC documents is protected by a privilege for the purpose of Plaintiffs' motion to compel. Thus, as Navistar has not shown that privileges even apply here, it has not shown that production of the SEC documents would be unduly burdensome because of those privileges.

The Court has a greater concern over Navistar's contention that the number of the SEC documents makes their production unduly burdensome. Navistar has submitted an affidavit of Michael Weil, Director of the Legal Consulting Digital Evidence practice of the Huron Consulting Group, which Navistar retained to assist in the SEC document production. Mr. Weil states that Navistar produced 1,170,932 hard copy pages to the SEC, as well as ten hard drives

containing 3,338,221 pages. (Def's. Resp. at Ex. 4). Certainly, this is a daunting number of documents, and courts must give heed to the fact that the "benefits of the requested production must outweigh the burden of compliance with the [request]." *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 930-31 (7th Cir. 2004). When Navistar's relevance and privilege arguments are removed, however, the remaining burden of production is not as clear as the sheer volume of documents might otherwise suggest.

Navistar states that producing the documents would be difficult, but it does not explain what specific burdens will arise if it is required to reproduce documents that have already been collected and produced before. As with the *Ustian* documents, Navistar does not state whether it already has copies of the 1,170,932 hard copy documents given to the SEC, or whether it would be required to reduplicate substantial amounts of the work that went into the original production. Navistar cites relevant caselaw warning against requiring parties to undergo undue expense in producing documents – a point the Court takes seriously. But it does not argue how that principle applies in this case or what expense would be involved in giving Plaintiffs what Navistar has already given to the SEC. If Navistar already has copies of these documents, the costs would not be significant; if not, the costs would be greater. Without addressing that burden in specific terms, however, the Court has no information on the issue. "The mere fact that [it] will be required to expend a considerable amount of time, effort, or expense in answering the [request] is not a sufficient reason to preclude discovery. . . . By making overly general assertions of undue hardship, [Navistar] cannot avoid complying with . . . discovery requests." *Schaap v. Executive Inds., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) (internal citation omitted).

The remaining portions of the SEC production appear to involve electronically stored information ("ESI"). Mr. Weil states that Navistar provided the agency with ten hard drives containing 390 gigabytes. Notably absent from Navistar's argument is any particularized statement of the burdens that would be imposed by producing the same hard drives to Plaintiffs or what the production would involve. Federal Rule of Civil Procedure 26(b)(2), which governs the limitations on the discovery of ESI, protects a party like Navistar from producing ESI "that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Rule 26 places the burden for showing this squarely on Navistar. *Id*. In its brief and at the hearing, Navistar addressed these burdens in terms of the need to review this information for relevance and privilege, issues that the Court has already discussed. The company does not, however, make any claim concerning the costs that it would have to bear in accessing or producing the ESI. Nor does it explain why turning over ESI that has already been gathered and produced is, in itself, unduly burdensome.

Plaintiffs have not indicated that they asked Navistar to produce the SEC documents in any particular form, as Rule 34 allows them to do. Fed. R. Civ. P. 34(b)(1)(C) (stating that the requesting party "may specify the form or forms in which electronically stored information is to be produced."). Accordingly, the same rule allows Navistar to turn over ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," and the company "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(2)(E)(ii) & (iii). What this means for Navistar, however, is not asserted with the clarity or specificity required to carry Navistar's burden of proof on this issue. Neither Mr. Weil nor Navistar, for example, claims that Navistar would be required to do more than give

- 21 -

Plaintiffs the hard drives themselves as the form in which the ESI is "ordinarily maintained." Fed. R. Civ. P. 34(2)(E)(ii). The Court does not suggest that such a simple process is what Navistar faces here, but if that is not the case, then Navistar was obligated to state that fact and to demonstrate the difficulties it would encounter. *See Susquehanna Comm. Finance, Inc. v. Vascular Resources, Inc.*, No. 1:09-CV-2012, 2010 WL 4973317, at *13 (Dec. 1, 2010) (noting that "courts have generally found that the burden rests with the party objecting to the production of metadata or ESI to show undue hardship or expense."). Navistar's argument at the hearing that it would have to review the 3,338,221 pages contained on the hard drives for relevance and privilege is unpersuasive for the reasons stated earlier.

The Court's concern on this front is lessened by the fact that Plaintiffs point out in their reply brief that the parties reached an agreement that Navistar would only produce those documents immediately relevant to the causes of the blackout, not the entire range of the SEC documents that Plaintiffs originally sought. Again, however, Navistar has provided no argument as to why it would be unduly burdensome to reduce the original request to this more narrowly-tailored set of documents.[6] Assuming for the sake of argument that Navistar would re-assert its claim that it would be required to sort through the documents to determine which are relevant, Navistar does not indicate what specific burdens this would actually entail. If this were the first time that Navistar was required to produce the documents, the company's generalized burden claim would be considerably more persuasive. As it stands, the Court presumes that Navistar would not be confronted with the hard drives or the information they contain as if the

---

[6] As with the *Ustian* documents, Plaintiffs' original request does not require Navistar to review the SEC production to winnow out documents immediately relevant to the cause of the Restatement. Instead, Plaintiffs ask for the entire production itself.

- 22 -

company had never seen them before and that Navistar would not be required to reduplicate the efforts involved in producing them earlier to the SEC. However, neither Navistar nor Mr. Weil's affidavit addresses any of the relevant facts on this important issue, including how the documents were arranged (by topic, date, *etc*.), what prior review of them took place, what records or index of that review are currently available for reference, the time and expense involved in reviewing such a summary record, if production would be physical, electronic, or both, or if hard copies of the documents in the hard drives already exist. Whether it would be relatively easy to locate the smaller number of documents Plaintiffs have agreed to accept by consulting an index of the earlier production, or whether it would be difficult to do so because Navistar did not keep such an index, is left unaddressed.

Thus, the Court has no evidence on which to determine that the production, while potentially burdensome, would impose such an undue hardship that Plaintiffs' request should be denied. Navistar has not shown why the SEC documents are not relevant, and Navistar cannot rely on privileges to support its burdensomeness argument without first asserting those privileges in compliance with well-established rules. In the absence of specific arguments from Navistar on this issue, the Court cannot conclude that the company has carried its burden of proof to demonstrate that producing materials that have already been collected, organized, and turned over to the SEC would be unduly burdensome. As with the documents related to the affirmative defenses, however, Navistar may submit the *Ustian* and SEC documents with an appropriate privilege log if it believes that some of the produced items are protected by a privilege. Plaintiff's motion is granted on this issue.

### IV.  <u>Conclusion</u>

For all these reasons, the Court finds that Plaintiffs' Second Motion to Compel Discovery Compliance [Dckt. 180] is granted.  In light of the number of documents at issue, the Court grants Navistar an enlarged period of time to produce the requested documents.  Accordingly, within sixty days of the entry of this order, Navistar shall produce all the documents sought in Plaintiffs' motion.

**ENTER ORDER:**

**MARTIN C. ASHMAN**

**Dated:**  September 1, 2011.                      United States Magistrate Judge

- 24 -